UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JORGE BAEZ,<br>        Plaintiff,<br>    v.<br><br>BAYMARK DETOXIFICATION<br>SERVICES, INC.<br>        Defendant, | Civil Action No. 22-30001-MGM |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 31)
January 18, 2024

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Plaintiff, Jorge Baez, was employed as a counselor at a medication-assisted addiction treatment facility in Chicopee, Massachusetts from 1997 until November 2020. His employer terminated his employment following an investigation into time discrepancies between the billing records he submitted for telehealth counseling sessions and his telephone records. In his Complaint, filed in Massachusetts Superior Court, Plaintiff alleged Defendant, BayMark Detoxification Services, Inc. ("Defendant"), a Delaware corporation with a principal place of business in Texas, terminated his employment in violation of Massachusetts law barring disability discrimination and retaliation by employers. MASS. GEN. LAWS c. 151B, § 4. Defendant removed the case to this court based on the parties' diversity and then answered Plaintiff's Complaint, asserting several defenses, including that it had never been Plaintiff's employer. Despite those defenses, during discovery, Defendant produced material and witnesses related to Plaintiff's claims that were under the control of its parent corporation, BayMark Health Services, Inc. ("BHS"), also headquartered in Texas. Defendant has

now moved for summary judgment and argued, in part, that it is entitled to judgment as a matter of law because the undisputed facts establish that it was not Plaintiff's employer.

## II. SUMMARY JUDGMENT STANDARD

"The function of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Burt v. Bd. of Trustees of Univ. of Rhode Island*, 84 F.4th 42, 59 (1st Cir. 2023) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 748 F.3d 418, 422 (1st Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law'" and disputes are genuine when a reasonable jury considering the evidence "'could resolve the point in the favor of the non-moving party.'" *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23-24 (1st Cir. 2017) (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)). When deciding a motion for summary judgment, "[t]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [the non-moving party's] favor." *Carlson v. Univ. of New England*, 899 F.3d 36, 43 (1st Cir. 2018). As the moving party, Defendant bears the burden of identifying the basis for its motion, including the absence of any genuine issues of material fact. *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997). Plaintiff "enjoys a favorable presumption for the evidence it adduces," but still "must point to evidence that a reasonable factfinder could employ to its behoof." *Burt*, 84 F.4th at 59.

In the District of Massachusetts, the presentation of sufficient evidence is governed by Local Rule 56.1, which provides that "[m]otions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation." D. Mass. R. 56.1. A

party opposing a motion for summary judgment has a corresponding obligation to provide the court with a concise statement of material facts that are in dispute, also tied by page references to specific "affidavits, depositions and other documentation." *Id.* Though it is not required under this district's local rule, the non-moving party usually provides a paragraph-by-paragraph rebuttal to the moving party's 56.1 statement, making it easy for the court to identify the statements contested by the non-moving party. *See McGrath v. Tavares*, 757 F.3d 20, 26 n.10 (1st Cir. 2014). Properly supported facts set forth by the moving party and not placed into dispute by properly supported contrary facts identified by the opposing party are deemed admitted for purposes of the summary judgment motion. Mass. R. 56.1; *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

After the non-moving party responds to the motion for summary judgment, "[u]nless the court orders otherwise," the moving party may then file a reply. D. Mass. R. 56.1. The rule does not automatically allow the non-moving party to file a sur-reply, though nothing prevents a court from granting a motion for leave to file one. *Id.* Since a sur-reply is not automatically permitted, the court concludes a moving party's reply may only respond to the facts and arguments raised by the non-movant and may not assert new facts or raise new arguments beyond what is necessary to respond to the non-movant's opposition. *See, Knowlton v. Shaw*, 791 F. Supp. 2d 220, 268 (D. Me. 2011) (explaining that when a local rule provides for the filing of a reply but not a sur-reply, the inclusion of new facts in a reply "run[s] contrary to the requirement that the facts must be interpreted in a manner most congenial to the non-movant").

In this case, Plaintiff elected to file a counterstatement of facts, rather than a paragraph-by-paragraph rebuttal. Defendant then filed its reply and a paragraph-by-paragraph response to Plaintiff's counterstatement, even though the local rule does not permit the moving party to supplement its

3

statement of facts. Since Plaintiff's counterstatement left it up to the court to determine which of Defendant's facts Plaintiff has contested and Defendant's response aids those efforts, the court has considered all three 56.1 statements to the extent they assist the court in determining which of the facts in Defendant's original 56.1 statement have been properly controverted by Plaintiff. However, the court has not considered any new facts first stated in Defendant's response to Plaintiff's 56.1 statement.

III. SUMMARY OF MATERIAL FACTS

For more than twenty years, Plaintiff was employed as a counselor at a medication-assisted addiction treatment facility in Chicopee operated by Community Health Care, Inc. d/b/a Health Care Resource Centers ("CHC"). In 2017, CHC was acquired by BHS. CHC is a subsidiary of BHS and is registered to do business in Massachusetts. BHS is not registered to do business in Massachusetts. BHS employees provide human resources and compliance support to its subsidiaries, including CHC.

Both CHC and Defendant are subsidiaries of BHS, but they have no other connection to each other. Defendant is a holding company and has never had any employees. It owns several subsidiaries, including one that previously operated a clinic in Wellesley, Massachusetts. Defendant is registered to do business in Massachusetts, though it no longer actively operates in the state.

Plaintiff is disabled and on several occasions during the more than twenty years he worked at the Chicopee facility, he requested and was granted medical leaves of absence. His last approved medical leave commenced on March 9, 2020 and extended through May 31, 2020. While he was on medical leave, the COVID-19 pandemic began. One way CHC responded to the pandemic was by allowing "eligible" counselors to work from home. To be eligible, a counselor had to meet certain

standards for billing and productivity and undergo training regarding how to work from home effectively.

When Plaintiff returned to work after his medical leave, he asked about working from home. At the time he did not meet the previously established billing and productivity standards to be eligible to work from home. Several months later, after Plaintiff began meeting the standards, CHC approved his request to work from home. Plaintiff began to work from home on August 24, 2020. In mid-October, all counselors at the Chicopee facility were informed via email that supervisors were going to be conducting weekly audits of billing records and that all clinical staff would be subject to audits. On or around October 23, 2020, a supervisor audited Plaintiff's billing records by comparing the times he billed for telehealth counseling sessions with his telephone records. Plaintiff's supervisor discovered 17 instances in which Plaintiff's billing records did not match the durations of the corresponding calls in his telephone records. In one instance, Plaintiff had billed for a 60-minute counseling session, but his phone records showed a 33-minute phone call. At his deposition, Plaintiff stated that he did not "recall having any counseling session less than 30 minutes or 60 minutes." (Dkt. 41-12, Pl. Depo. at 75.)

On October 30, 2020, Plaintiff was informed that he could no longer work from home. Later that same day, Plaintiff submit a request to be able to resume working from home as an accommodation for his disability. Plaintiff was terminated on November 10, 2020, effective November 13, 2020. Two non-disabled counselors employed by other BHS subsidiaries were also terminated in November 2020 for falsifying billing records.

Plaintiff filed a charge with the Massachusetts Commission Against Discrimination, identifying his employer as "Healthcare Resource Center/Cmmty Substance Abuse." (MCAD Compl., Dkt. No. 31-2.) Plaintiff's employer responded to the charge and identified itself as an operator of outpatient medication-assistant treatment centers and "a subsidiary of BayMark Health

5

Services, Inc.," since 2017. (MCAD Position Statement, Mar. 23, 2021, Dkt. 33-3 at 1.) In December 2021, Plaintiff filed the complaint in this action against Defendant. After removing the action to this court, Defendant filed an answer denying that it had ever employed Plaintiff and asserting several related affirmative defenses. The parties proceeded to discovery, during which Defendant produced information, witnesses, and documents obtained through its corporate parent, BHS. Plaintiff never sought to add CHC or BHS as additional defendants; Defendant never stated that it was waiving its claims that it has no liability because it was not Plaintiff's employer.

## IV. Discussion

Defendant has moved for summary judgment on Plaintiff's two claims, brought pursuant to the Massachusetts statute that protects employees from disability-based discrimination and retaliation by employers. MASS. GEN. LAWS c. 151B, § 4. Chapter 151B prohibits discriminatory employment practices by an "employer." *DeLia v. Verizon Comms. Inc.*, 656 F.3d 1, 4 (1st Cir. 2011). Defendant contends that it cannot be liable under Chapter 151B because it was not Plaintiff's employer. Although the statute itself offers little guidance, courts have held an "employer" is the entity that exercised control over the employee's workplace. *Id.* Applied to this case, the definition compels the conclusion that Defendant was not Plaintiff's employer. Though there are factual disputes about whether Plaintiff's employer was CHC or BHS, it is uncontested that Defendant had no employees and played no role in operating the Chicopee facility.

In his opposition to Defendant's motion, Plaintiff acknowledged that Defendant was not his employer, but argued the interests of fairness require the court to allow him to proceed against Defendant or amend his complaint to add claims against BHS. He suggested his employer's response to his MCAD complaint and Defendant's cooperation during discovery led him to believe he had sued the correct defendant. Alternatively, Plaintiff argues that he had no choice but to pursue his claims

6

against Defendant because BHS is not registered to do business in Massachusetts. He has also urged the court to allow him to amend his complaint to add claims against BHS, asserting that there would be no prejudice because BHS had knowledge of this litigation through its close corporate ties to Defendant.

When Defendant filed its Answer, it placed Plaintiff on notice that it had not employed him and would assert related affirmative defenses. Defendant did not file a motion to dismiss based on those defenses and Plaintiff did not move to amend his complaint. During discovery, Defendant produced documents and witnesses related to Plaintiff's claims, presumably obtained through BHS. Plaintiff now argues Defendant waived defenses based on it not having employed Plaintiff by not asserting them in a motion to dismiss and by producing material related to Plaintiff's employment during discovery. The court disagrees. Plaintiff has not identified any communications from Defendant that expressed an intention to waive defenses or made misleading statements about its litigation position. Defendant clearly asserted its defenses in its Answer and Plaintiff has not identified any rule that obligated Defendant to preserve those defenses by seeking an early dismissal or limiting its cooperation during discovery.

On the other hand, as the party asserting claims pursuant to Chapter 151B, it was Plaintiff's burden to ensure that he would be able to establish all the necessary elements. *See DeLia*, 656 F.3d at 5-6; *see also Bulwer v. Mount Auburn Hosp.*, 46 N.E.3d 24, 32 (Mass. 2016) (setting forth the elements of a successful employment discrimination claim under Chapter 151B). This included demonstrating that the entity he sued took an adverse employment action against him because of discriminatory animus or aided or abetted such an action. *Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 50 N.E.3d 778, 793 (Mass. 2016). Despite having Defendant's Answer, Plaintiff did not move to amend his complaint to add claims against BHS and/or CHC prior to the October 28, 2022 deadline set in the Scheduling Order. (Dkt. No. 22.) Nor did he seek leave to file a late amendment as soon as he

7

learned through discovery that Defendant was not involved in operating the Chicopee facility. A separate, and timely, motion to amend would have allowed the court to hear directly from CHC and BHS and address any impediments to joining one or both entities as defendants. Instead, Plaintiff only proposed amending his complaint to add additional defendants in response to Defendant's motion for summary judgment. The First Circuit routinely rejects efforts by plaintiffs to amend their complaint through oppositions to a defendant's motion for summary judgment because of the significant risk of prejudice to defendants. *Katz v. Belveron Real Estate Partners, LLC*, 28 F.4th 300, 309 (1st Cir. 2022); *see also Miranda-Rivera v. Toledo-Dávila*, 813 F.3d 64, 76 (1st Cir. 2016) ("Allowing a plaintiff to proceed on new, unpled theories after the close of discovery would prejudice defendants, who would have focused their discovery efforts on the theories actually pled.").

Plaintiff contends that his amendment would not prejudice BHS because it has been aware of this litigation and likely assisted Defendant during discovery. This argument does not account for the fact that BHS and Defendant may have made different decisions during discovery had Plaintiff's Complaint included claims against BHS. Additionally, because the time for filing amended pleadings has passed, Plaintiff is required to demonstrate not only that his proposed amendments would not prejudice Defendant, but also that there is good cause for his delay in seeking to amend his complaint. Fed. R. Civ. P. 16(b); *see also U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 194 (1st Cir. 2015)("[R]equests for leave to amend are normally evaluated under Rule 15(a)'s leave freely given standard. When made in derogation of a scheduling order, however, Rule 16(b)'s more stringent good cause standard takes precedence."). While it is unfortunate that he is not able to pursue his substantive claims because he has sued Defendant, rather than his former employer, Plaintiff has not demonstrated good cause to amend his complaint at this late date.

Finally, Plaintiff has not cited any authority that would allow this court to impose Chapter 151B liability on Defendant simply because it is a subsidiary of BHS. Massachusetts law includes a

strong "presumption of corporate separateness [that] may be overcome only 'in rare particular situations in order to prevent gross inequity.'" *Platten v. HG Bermuda Exempted Ltd.*, 473 F.3d 118, 128 (1st Cir. 2006). There are twelve factors a court must consider before disregarding corporate form. *Id.* Plaintiff has addressed only two of these factors, noting that the same individuals own and control Defendant and BHS. *Id.* These limited observations fall far short of establishing a basis for this court to disregard Defendant's corporate form. In the absence of evidence of the types of egregious conduct that justifies disregard for corporate separation, both Defendant and BHS would clearly be prejudiced by any course of action that treats them as interchangeable entities.

## V. CONCLUSION

For the foregoing reasons, the court grants Defendant's motion for summary judgment (Dkt. No. 31). This case may now be closed.

It is So Ordered.

     /s/ Mark G. Mastroianni  
MARK G. MASTROIANNI  
United States District Judge